## CONSOLIDATED STONE COMPANY *v.* STAGGS, ADMINISTRATRIX.

[No. 20,486.   Filed March 8, 1905.]

1. APPEAL AND ERROR.—*Motion to Make More Specific.—Record.—* An assignment of error that the court erred in overruling a motion to make more specific presents no question when such motion is not contained in the record on appeal. p. 333.

2. SAME.—*Defective Transcript.—*A transcript of a cause tried on a change of venue from the county, which fails to show that the original papers were filed in the clerk's office of the trial court, and the certificate of which shows that it contains a "copy of the record in said cause as appears of record and on file" in such clerk's office, does not identify the paragraphs of complaint filed in the court from which the venue was changed sufficiently to present any question thereon. p. 333.

Consolidated Stone Co. *v.* Staggs.

3. PLEADING.—*Complaint.*—*Defect.*—*Knowledge.*—*Want of.*—A complaint which negatives knowledge of a defect in general terms negatives both actual and constructive knowledge.    p. 333.

4. SAME.—*Complaint.*—*Injuries.*—*Defect.*—*Proximate Cause.*—A complaint alleging that decedent was killed by reason of a defective derrick causing a guy line to slack thereby causing a stone to be pushed from a car and to fall upon decedent, and further alleging that defendant was negligent "in so allowing said derrick, mast, boom poles and guy ropes to become loose and defective," is sufficient as to the objection that the death did not flow from the negligence charged. p. 335.

5. TRIAL.—*Instructions.*—*Measure of Damages.*—An instruction in an action for damages for death by wrongful act of defendant which states that "the measure of damages is the pecuniary loss of his widow as a means of support in the service and assistance of her husband" and which further speaks of the money the "family" would probably have received for "their" support, is both confusing and misleading, especially since it was shown that the widow was the only one legally entitled to support, all the evidence in reference to an alleged adopted child being stricken from the record.    p. 335.

6. DAMAGES.—*Measure of.*—*Death by Wrongful Act.*—The measure of damages for the death of a person by wrongful act is the amount of pecuniary loss sustained by the parties entitled to the benefit of the action.    p. 337.

From Greene Circuit Court; *Orion B. Harris,* Judge.

Action by Lila Staggs as administratrix of the estate of John Staggs, deceased, against the Consolidated Stone Company. From a judgment for plaintiff, defendant appeals. Appealed from Appellate Court under §1337j Burns 1901, Acts 1901, p. 565, §10.    *Reversed.*

*Duncan & Balman* and *Cyrus E. Davis,* for appellant.
*John R. East* and *Rufus H. East,* for appellee.

GILLETT, J.—Action by appellee for the negligent killing of her decedent. The suit was commenced in the Monroe Circuit Court, and the issues were made up there as to the first and second paragraphs of the complaint. The venue was afterwards changed to the Greene Circuit Court. There was a third paragraph of complaint filed there, and, upon the closing of the issues, there was a trial by jury, which re-

sulted in a verdict in appellee's favor for $7,000, on which judgment was rendered.

1.   The first assignment of error is that "the court erred in overruling appellant's motion to make the third paragraph of complaint more specific." The record does not disclose that such a motion was made.

2.   Appellant seeks to question the action of the Monroe Circuit Court in overruling a demurrer for want of facts, which was addressed to the first and second paragraphs of complaint. Appellee's counsel contend that these paragraphs and the demurrer are not before us. The transcript of the clerk of said court contains what purport to be copies of the first and second paragraphs of complaint and of the demurrer addressed to them, but in his certificate he only certifies to the correctness of the copies of the entries of the court. It does not appear from the record that the original papers were deposited in the office of the clerk of the Greene Circuit Court. His transcript does not contain them, and his final certificate goes no further in this particular than to certify that the transcript "contains a full, true and complete copy of the record in said cause, as the same appears of record and on file in my office." Both in respect to the body of the record and the final certificate, this case is very different from *Southern Ind. R. Co.* v. *Martin* (1903), 160 Ind. 280. While we might presume in this case that the original papers were deposited in the office of the clerk of the Greene Circuit Court at the time the transcript was filed, the fact remains that every word of both certificates might be true, and yet that correct copies of the complaint and demurrer were not before us. Timely notice of this objection was given by appellee's brief, and there having been no effort to get a transcript of these papers into the record by writ of *certiorari* issued to the clerk of the court below, we are not warranted in passing upon the sufficiency of these two paragraphs.

3.   Appellant's third assignment of error draws in ques-

tion the overruling of its demurrer to the third paragraph of the complaint. It is urged that it does not appear in this paragraph that decedent did not assume the risk. We shall not attempt to digest the paragraph. It will suffice for an introductory statement concerning it to state that it asserts that the death of appellee's decedent was caused by a guy, used in the support of a large derrick, dragging from a loaded dump-car a stone, which fell upon decedent as he was assisting in pushing the car along a tramway which passed under the guy. The allegations of decedent's want of knowledge are as follows: "The plaintiff alleges that on said date, and prior thereto, the deceased, John Staggs, had no knowledge of the defective condition of said derrick, guy-rope, mast, boom, or other parts of said derrick and machinery; that he did not work near it, or in view of it, and had no opportunity, in his work, of observing the condition of said derrick and its machinery, and on the day of his death and prior thereto had no knowledge that the place where he was working was dangerous and unsafe for him to work, but relied upon the facts that defendant had all its machinery in good working order and had made the place where he was working safe for him to work." An averment of a want of knowledge in a complaint negatives both actual and constructive knowledge. *Indianapolis, etc., Transit Co.* v. *Foreman* (1904), 162 Ind. 85. It is true that said paragraph does not show that decedent was ignorant of the existence of every condition which is made the basis of a charge of negligence against appellant, yet we think that the paragraph was sufficient. While it is to be inferred against the pleader that decedent had a sufficient opportunity to observe the height of the guy above the tramway, yet it is charged that he did not know of the defects in the derrick which under certain circumstances would cause the guy to slack. A servant is not to be deemed to have consented to an unusual risk, where he had no knowledge of exceptional

danger, and could not with ordinary care and prudence have discovered it. 4 Thompson, Negligence (2d ed.), §4631.

4. Appellant's counsel further contend that it does not appear from said paragraph that the death of Staggs was the direct result of the negligence charged. While it is true that the paragraph does not state that the derrick operated at that time in the manner that it appears elsewhere in the pleading that its defective condition would cause it to do, yet it appears from the paragraph that the guy suddenly slacked, as the car was passing under it, by reason of the defective condition of the derrick, and that the slacking of the guy caused the stone which fell upon Staggs to be pushed off the car, thereby killing him. It further appears from the paragraph that his death was caused by the carelessness and negligence of appellant in various particulars, and, among others, "in so allowing said derrick, mast, boom poles and guy-ropes to become loose and defective as herein charged." Bearing in mind the fact that a charge of negligence in a pleading is of technical significance, and that where a duty to use care is disclosed by the facts pleaded, the averment as to the matters wherein the negligence consisted may be very general, we conclude that the paragraph under consideration is not open to the objection mentioned.

5. Upon the trial of the cause, Lila Staggs, who is prosecuting this cause as administratrix, testified that her husband left surviving him herself, his widow, and an adopted child, one Ida Belle Staggs, who was living with said witness in Kentucky. The cross-examination showed that there was a proceeding in court with reference to said adoption, and the court, on appellant's motion, struck out the testimony of said witness with reference to said child. Among other instructions which the court subsequently gave to the jury was the following: "If you should find for the plaintiff in this cause, then it is your duty to assess the amount of damages, and, in determining the amount, you

may consider the age of the deceased at the time of his death, his health, habits, occupation, strength, opportunities and capabilities, if there has been any evidence on these points, or evidence from which his condition in these respects may be inferred. You may consider the amount he was earning at the time of his death and prior thereto. The measure of damages is the pecuniary loss of his widow as a means of support in the service and assistance of her husband. These elements of damages may be determined by you by considering the probable earnings of the deceased from the time of his death to the present, together with the earnings of the deceased in the future, which he would probably have given to his family, and from all these you will determine what the deceased would probably have contributed to their support, deducting, however, the probable amount he would have expended for his individual support during his probable lifetime, and thus you will assess the damages of plaintiff at such sum as will fully and fairly compensate for the loss sustained by the death of John Staggs." This instruction is so obscure and involved that it is difficult to discuss its effect. The statement that "the measure of damages is the pecuniary loss of his widow as a means of support in the service and assistance of her husband" was not accurate, and the language stood much in need of clarifying. While we think that we perceive the idea of the court in so expressing itself, yet we are sure that the jurors, who merely heard it read, were more confused than enlightened by the statement. The subsequent portions of the instruction tended to increase the uncertainty. The reference to the money the "family" would probably have received for "their" support from the earnings of decedent was very misleading, and it is impossible to tell what use the jury made of it. The complaint charged that the decedent left surviving him an adopted child, and, as we have seen, there was parol evidence to that effect. It is very probable that, acting in the light of this instruction, the jury con-

sidered such evidence, although the court had before ordered it stricken from the record.

The instruction is also objectionable as calculated to lead the jury to infer that the damages were to be ascertained by means of a particular mathematical calculation. The inference that the way suggested was the manner in which the jury should admeasure the damages was irresistible.

6.    Under a statute like ours, which gives a new right of action, distinct from that which the deceased might have maintained, the measure of damages is compensation for the pecuniary loss sustained by the party or parties entitled to the benefit of the action. "The sole inquiry is how many dollars are necessary to compensate the beneficiaries for the pecuniary loss caused to them by the wrongful death." 8 Am. and Eng. Ency. Law (2d ed.), 909, and cases cited. The damages are not to be estimated at the value of the life lost, but at such a sum as will compensate the persons on whose behalf the action is brought for the pecuniary injury which they have sustained by the death. *Anderson* v. *Chicago, etc., R. Co.* (1892), 35 Neb. 95, 52 N. W. 840. Although a mist seems to hang over the cases when a concrete application of a rule of damages is sought, yet this uncertainty exists because the extent of the compensation is so largely a jury question. It was said in *Railroad* v. *Spence* (1893), 93 Tenn. 173, 189, 23 S. W. 211, 42 Am. St. 907: "The assessment of damages in actions of this character does not admit of fixed rules and mathematical precision, but is a matter left to the sound discretion of the jury. The courts refuse to lay down any cast-iron rules or mathematical formula by which such damages are to be ciphered out by juries." It is proper to direct the minds of the jury to the various pertinent facts which the evidence may show as circumstances which may be considered in determining the question of compensation; but to suggest a method of computation could scarcely be competent in any case, and to instruct

that such a method should be pursued would be an invasion of the province of that body. The jury should be confined to compensation for pecuniary loss, but, within the range of the evidence which may justly be said to bear on that subject, the question of damages is essentially a question of fact. *City of Delphi* v. *Lowery* (1881), 74 Ind. 520, 39 Am. Rep. 98; *Louisville, etc., R. Co.* v. *Buck* (1889), 116 Ind. 566, 2 L. R. A. 520, 9 Am. St. 883; *Pittsburgh, etc., R. Co.* v. *Burton* (1894), 139 Ind. 357. Because of the giving of said instruction, the cause must be reversed. 11 Ency. Pl. and Pr., 140.

Other questions have been presented, but as they may not arise upon a subsequent trial, we shall not consider them.

Judgment reversed, and a new trial ordered.